## DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE POLICE *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (AC 17495)

O'Connell, C. J., and Foti and Spear, Js.

Submitted on briefs September 25—officially released November 24, 1998

*Mitchell W. Pearlman,* general counsel, and *Victor R. Perpetua,* commission counsel, filed a brief for the appellant (named defendant).

*Richard Blumenthal,* attorney general, and *Henri Alexandre,* assistant attorney general, filed a brief for the appellee (plaintiff).

*Opinion*

The defendant freedom of information commission (commission)[1] appeals from the judgment of the trial court determining that certain information was exempt from disclosure under the Freedom of Information Act, General Statutes § 1-18a et seq. The commission claims that the trial court improperly (1) concluded that the records requested were exempt from disclosure pursuant to General Statutes § 1-19 (b) (3) (C),[2] (2)

[1] The defendants Tracey Thomas and T. Dennie Williams, staff reporters, and the Hartford Courant were the complainants in this matter before the commission. Only the commission has appealed. The commission is a state agency empowered to investigate alleged violations by public agencies of the Freedom of Information Act, General Statutes § 1-18a et seq.

[2] General Statutes § 1-19 (b) provides in relevant part: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (3) records of law enforcement

substituted its judgment for that of the commission and thus failed to follow the applicable scope of judicial review in administrative appeals and (3) rendered an advisory opinion that was not based on the actual controversy. We agree with the commission's first claim and, therefore, reverse the judgment of the trial court.[3]

On July 6, 1995, Ramesh Mali, a member of the Nepalese Special Olympics team, was reported missing while swimming at Hammonasset Beach state park in Madison. On July 10, 1995, after an extensive rescue and recovery effort by state and federal agencies, Mali's body was found off Meigs Point. An autopsy conducted the following day determined that the cause of Mali's death was asphyxia due to submersion.

Immediately following the incident, the complainants[4] requested access to the investigative reports and records generated by the plaintiff concerning Mali's disappearance. By letter dated July 12, 1995, the plaintiff indicated that the complainants' request for access was being reviewed and later notified the complainants that their request was denied because the investigation into the incident had not yet been completed. The complainants requested relief from the commission.

A hearing was held by the commission on January 24, 1996.[5] In its final decision, the commission found

agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of . . . (C) information to be used in a prospective law enforcement action if prejudicial to such action . . . ."

[3] Because we conclude as we do on this issue, we find it unnecessary to address the other issues raised by the commission.

[4] See footnote 1.

[5] All records concerning the entire incident were eventually made available to the complainants on or about November 8, 1995. Although these records were provided prior to the hearing, we conclude that this matter is not moot. "[W]here an order issued by the commission is prospective in nature and impacts obligations of the plaintiff in the future with respect to disclosure requests from members of the public, an appeal from that order is not

that the records requested by the complainants were public records within the meaning of General Statutes §§ 1-18a (d) and 1-19 (a). Additionally, it found that portions of the reports dated on or after August 16, 1995, indicated that the investigation into Mali's drowning was closed and denoted that there was no criminal aspect to the incident. The commission determined that because the plaintiff no longer treated the incident as a potentially criminal matter as of August 16, 1995, it should have released any signed witness statements on that date. The commission further concluded that the plaintiff had failed to sustain its burden of demonstrating that the remainder of the reports were exempt from disclosure pursuant to § 1-19 (b) (3) and, therefore, should have provided the complainants with copies of such records as soon as they were prepared.

The plaintiff appealed to the trial court from the commission's decision. The trial court determined that there was little or no evidence presented that a crime had been committed and that the plaintiff had, as early as July 19, 1995, foreclosed the possibility of a potential prosecution.[6] The court concluded, however, that all of the requested reports were exempt from disclosure under § 1-19 (b) (3) (C) because the investigation was conducted as if a crime may have been committed.[7] The trial court found that the plaintiff had satisfied the statute by initially treating the matter as "potentially criminal." The trial court concluded by finding that as

moot even though the requested documents were voluntarily disclosed by the plaintiff prior to the commission's decision." *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 522, 525 n.4, 711 A.2d 738, cert. denied, 245 Conn. 913, 718 A.2d 18 (1998).

[6] In its brief, the plaintiff states: "The plaintiff does agree with the defendants, however, that the trial court could have sustained the appeal in view of the conclusions of law it reached."

[7] The commission found that from the outset of the investigation, the plaintiff treated it as a potential criminal matter, but abandoned that view as of August 16, 1995.

long as there is a "good faith basis for the assertion" that an investigation is potentially criminal in nature and that a possible prosecution will ensue, disclosure in the future would not be required.

"Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . We look to see if the [trial] court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Dortenzio* v. *Freedom of Information Commission*, 48 Conn. App. 424, 430, 710 A.2d 801 (1998).

"Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." *Board of Labor Relations* v. *Freedom of Information Commission*, 43 Conn. App. 133, 137, 682 A.2d 1068 (1996), aff'd, 244 Conn. 487, 709 A.2d 1129 (1998). "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *Windham* v. *Freedom of Information Commission*, 48 Conn. App. 522, 526, 711 A.2d 738, cert. denied, 245 Conn. 913, 718 A.2d 18 (1998). Neither we nor the trial court may retry the case or substitute our own judgment for that of the commission. See *Shew* v. *Freedom of Information Commission*, 44 Conn. App. 611, 616, 691 A.2d 29 (1997), aff'd, 245 Conn. 149, 714 A.2d 664 (1998).

Section 1-19 (b) (3) (C) creates an exemption to the disclosure otherwise required by the Freedom of Information Act. Under that exemption, disclosure is not

required of "records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records . . . would result in the disclosure of . . . information *to be used in a prospective law enforcement action if prejudicial to such action* . . . ." (Emphasis added.) General Statutes § 1-19 (b) (3) (C). The statute, therefore, requires an evidentiary showing (1) that the records are to be used in a prospective law enforcement action and (2) that the disclosure of the records would be prejudicial to such action.

In this case, the record discloses, as the commission correctly points out, that the plaintiff's evidentiary claim had its basis in a showing that the completed records had not yet been reviewed by the division of criminal justice and that the office of the state's attorney had not yet closed the case. The statute, however, does not require that an investigation be closed before disclosure is required. Additionally, the statute is not satisfied and, consequently, information is not exempted from disclosure by the mere good faith assertion that the matter to which the information pertains is potentially criminal. As we have stated, there must be an evidentiary showing that the actual information sought is going to be used in a law enforcement action and that the disclosure of that information would be prejudicial to that action.

The trial court improperly concluded, therefore, that "the law does not require disclosure of records of investigations where it is not yet known if a crime has been committed or whether a prosecution will ensue, as long as there is a good faith basis for the assertion." The trial court misinterprets the clear language of the statute.

The judgment is reversed and the case is remanded with direction to render judgment consistent with this opinion.

In this opinion the other judges concurred.