JOHN F. MERCHANT *v.* STATE ETHICS COMMISSION
(AC 17619)

Foti, Hennessy and Daly, Js.

Argued December 7, 1998—officially released June 22, 1999

*John F. Merchant,* pro se, the appellant (plaintiff), with whom was *Daniel E. Brennan, Jr.*

*Gregory T. D'Auria,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Carolyn K. Querijero,* assistant attorney general, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, John F. Merchant, appeals from the judgment of the Superior Court dismissing his appeal from the decision of the defendant,

the state ethics commission (commission). The commission determined that the plaintiff, who was employed by the state of Connecticut as consumer counsel for the office of consumer counsel, violated the Code of Ethics for Public Officials (ethics code), General Statutes § 1-79 et seq.,[1] and the plaintiff appealed to the Superior Court. The plaintiff claims that the Superior Court improperly determined that (1) the commission had jurisdiction to hear this matter pursuant to the ethics code, (2) the commission provided timely notice of the filing of the complaint and a copy of the complaint to the plaintiff as required by the ethics code, (3) the unauthorized disclosure of the existence of a complaint against the plaintiff did not divest the commission of jurisdiction, (4) the commission was required to disclose its files where there was no finding of probable cause, (5) the Handbook for Appointed Officials was admissible before or enforceable by the commission, (6) the decision of the commission was supported by substantial evidence and (7) the multiplicity of procedural errors did not constitute a denial of procedural due process in violation of the United States and Connecticut constitutions. We affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. While the plaintiff was employed in the position of consumer counsel, a staff attorney filed a complaint with the commission alleging five separate violations of the ethics code by the plaintiff. After a preliminary hearing, the commission found probable cause to believe that the plaintiff had violated General Statutes § 1-84 (c) by improperly certifying his state attendance records to include hours when he was, in

[1] Specifically, the commission found that the defendant violated General Statutes § 1-84 (c), which provides in relevant part: "No public official or state employee shall wilfully and knowingly . . . use his public office or position . . . to obtain financial gain for himself . . . ."

fact, out of the state attending the Masters and Walker Cup golf tournaments in his capacity as a member of the United States Golf Association's executive committee.[2]

Thereafter, as mandated by General Statutes § 1-82 (b),[3] the commission held a violation hearing before a judge trial referee. The commission issued its decision in which it determined that the plaintiff had violated § 1-84 (c) as alleged. The commission concluded that the plaintiff had used his office for financial gain when he unilaterally determined that it was appropriate for him to claim work time when out of the state on personal business and, thereafter, vouched for the accuracy of his time sheets as head of the office of consumer counsel. The commission also determined that vacation time that the plaintiff accrued was of specific and substantial monetary value because he would be reimbursed fully for any accrued vacation time upon leaving state service. The commission imposed a civil penalty of $1000 against the plaintiff and ordered that he cease and desist from committing this violation of the ethics code.

The plaintiff appealed from the commission's decision to the Superior Court pursuant to General Statutes §§ 4-183 and 1-87. The Superior Court dismissed his appeal and this appeal followed. Other facts and procedural history will be discussed where relevant to the issues on appeal.

[2] As to the four other counts in the complaint filed with the commission, the commission determined that no probable cause existed for two of the counts and, with regard to the remaining two counts, the commission decided not to pursue the counts even though probable cause existed because the alleged financial gain was de minimis.

[3] General Statutes § 1-82 (b) provides in relevant part: "If a preliminary investigation indicates that probable cause exists for the violation of a provision of this part, the commission shall initiate hearings to determine whether there has been a violation of this part. A judge trial referee, who shall be assigned by the Chief Court Administrator and who shall be compensated in accordance with section 52-434 out of funds available to the commission, shall preside over such hearing and shall rule on all matters concerning

We note that "[j]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . We look to see if the [trial] court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion. . . . *Dortenzio* v. *Freedom of Information Commission*, 48 Conn. App. 424, 430, 710 A.2d 801 (1998)." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 51 Conn. App. 100, 104, 720 A.2d 268 (1998). "Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citation omitted; internal quotation marks omitted.) Id.

I

The plaintiff first claims that the Superior Court improperly determined that the commission had jurisdiction to hear this matter.[4] Specifically, the plaintiff argues that the subject matter of the complaints against him involved personnel issues, which have been delegated to the department of administrative services pursuant to the State Personnel Act, General Statutes § 5-193 et seq., and, therefore, the commission exceeded its jurisdiction in deciding this case. We are not persuaded.

The State Personnel Act sets forth its scope in General Statutes § 5-194, which provides: "This chapter

the application of the rules of evidence, which shall be the same as in judicial proceedings. . . ."

[4] We note that this issue is not addressed by the commission in its brief.

shall be so construed and administered as to provide a uniform and equitable system of personnel administration of employees in the state service. Recruitment, selection, appointment, development, promotion, transfer, layoff, classification, compensation, *discipline*, separation and provision for the welfare of state employees shall be performed in a manner to secure and retain well qualified employees to carry out state programs effectively and efficiently and to provide reasonable stability of employment in the state service." (Emphasis added.) We agree that the State Personnel Act sets forth a system of personnel administration of employees in state service under the authority of the commissioner of administrative services.

In this case, however, there was an allegation that the plaintiff used his public office for personal financial gain. The plaintiff did not cite any provision of the State Personnel Act that indicates that the commissioner of administrative services has the authority to discipline a state employee for this type of act. Even if we assume that the State Personnel Act does give the commissioner of administrative services the authority to discipline a state employee for this type of act, the plaintiff has not cited any language in the act indicating that the legislature intended that the grant of authority is exclusive to the commissioner of administrative services.

Section 1-84 (c) of the ethics code, on the other hand, provides in relevant part that "no public official or state employee shall use his public office or position . . . to obtain financial gain for himself . . . ." The plaintiff's alleged activity clearly falls within the jurisdiction of the commission under the ethics code. "Absent a statutory provision designating which commission is to have overriding responsibility . . . the fact that the legislature has given responsibility to more than one agency suggests that each must exercise its own authority, using its standards and procedures, regardless of what

the other agencies do under their delegation of power from the state." (Internal quotation marks omitted.) *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 96, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994). Section 1-82 of the ethics code provides the procedure to be used when a complaint has been filed against a public official alleging that the public official engaged in any of the prohibited activities. The commission used that procedure in addressing the allegations against the plaintiff.

The plaintiff has not persuaded this court that the department of administrative services has exclusive jurisdiction to address the violations that are the subject of the complaint. Accordingly, we conclude that the Superior Court did not abuse its discretion in concluding that the commission had jurisdiction to hear the matter.

## II

The plaintiff next claims that the Superior Court improperly determined that the commission complied with the notice mandates of the ethics code and therefore had jurisdiction to hear the matter. Specifically, the plaintiff argues that the commission did not provide him with notice of the filing of a complaint against him and did not provide him with a copy of the complaint within five days of the filing of the complaint with the commission as required by General Statutes § 1-82 (a) (1).[5] The commission responds that General Statutes

---

[5] General Statutes § 1-82 (a) (1) provides in relevant part: "Upon the complaint of any person on a form prescribed by the commission, signed under penalty of false statement, or upon its own complaint, the commission shall investigate any alleged violation of this part. *Not later than five days after the receipt or issuance of such complaint, the commission shall provide notice of such receipt or issuance and a copy of the complaint by registered or certified mail to any respondent against whom such complaint is filed* and shall provide notice of the receipt of such complaint to the complainant. . . ." (Emphasis added.)

(Rev. to 1993) § 1-82 (a) was in effect when the complaint was filed and that, under that version of the statute, its notice was proper because the five day notice was triggered by the sufficiency of evidence hearing and not by the filing of the complaint. We agree with the commission.

General Statutes (Rev. to 1993) § 1-82 (a) provides in relevant part: "Upon the complaint of any person . . . the commission shall, after meeting and determining that there is sufficient evidence to warrant such inquiry, investigate any alleged violation of this part. . . . The commission shall not later than five days after so meeting notify by registered or certified mail any respondent against whom such complaint is filed and a copy of such complaint shall accompany such notice. . . ."

The Superior Court found and the record reflects the following facts. The complaint against the plaintiff was filed and received by the commission on June 15, 1994. The commission conducted a sufficiency of the evidence hearing with regard to the allegations in the complaint on July 29, 1994. Subsequent to the sufficiency of evidence hearing, the commission sent to the plaintiff, via certified mail, notice of the filing of the complaint and a copy of the complaint on August 1, 1994.[6] On the basis of those facts, the Superior Court determined that notice was proper because General Statutes (Rev. to 1993) § 1-82 (a) was in effect on June 15, 1994. It further determined that Public Acts 1994, No. 94-132, which directed the commission to provide notice of the

[6] As the trial court found and the record reflects, the plaintiff did not receive that notice and that copy of the complaint until August 8, 1994. We note, however, that the commission provided the plaintiff with notice of the filing of the complaint against him and a copy of the complaint on July 18, 1994, when it provided him with notice of the sufficiency of evidence hearing. The plaintiff received that notice on July 22, 1994, prior to the time mandated by statute.

filing of the complaint and a copy of the complaint within five days *after the receipt or issuance of such complaint*, was not effective until October 1, 1994. We agree. Accordingly, we conclude that the commission complied with the revision of § 1-82 (a) then in effect and, therefore, the Superior Court did not abuse its discretion in finding that the commission had jurisdiction to hear the matter.

## III

The plaintiff next claims that the commission was divested of jurisdiction to hear this matter as a result of its violation of General Statutes § 1-82a. Specifically, the plaintiff argues that the unauthorized disclosure of the existence of a complaint against the plaintiff to the chairperson of the department of public utilities control (DPUC) was a violation of § 1-82a that results in the divestiture of the commission's jurisdiction. We are not persuaded.

Section § 1-82a provides in relevant part: "(a) Unless the commission makes a finding of probable cause, a complaint alleging a violation of this part shall be confidential except upon the request of the respondent. . . . No provision of this subsection shall prevent the Ethics Commission from reporting the possible commission of a crime to the Chief State's Attorney or other prosecutorial authority.

"(b) An investigation conducted prior to a probable cause finding shall be confidential except upon the request of the respondent. If the investigation is confidential, the allegations in the complaint and any information supplied to or received from the commission shall not be disclosed during the investigation to any third party by a complainant, respondent, witness, designated party, or commission or staff member. . . ."

Before making a determination on whether probable cause existed, the commission informed the chairperson of the DPUC[7] by letter that a complaint had been filed against the plaintiff.[8] The Superior Court determined that § 1-82a (b) applied and, because the commission disclosed the fact that a complaint had been filed against the plaintiff and did not disclose any of the allegations in the complaint, the commission did not violate § 1-82a (b). It further determined that even if § 1-82a (a) did apply, the plaintiff failed to provide any evidence that the letter from the commission to the DPUC was the source of the information in the two news articles[9] or that he was prejudiced or harmed in his hearing as a result of the news articles.

On appeal, the plaintiff asserts that § 1-82a establishes a bright line rule on when and how proceedings before the commission can be divulged and that the

[7] The office of consumer counsel is, by statute, within the DPUC for administrative purposes only. See General Statutes § 16-2a. The chairperson of the public utilities control authority shall be the head of the DPUC. See General Statutes § 16-1b.

[8] The letter from the executive director and general counsel of the commission to the chairman of the DPUC provides in relevant part: "An attorney in the Consumer Counsel's Office . . . has filed a complaint with the [commission] against . . . John Merchant. Although, of course, the [commission's] complaint procedures are confidential, I find that I must make this limited disclosure in order to address a situation which has been brought to the Commission's attention. After the complaint in question was filed, [the complainant] was suspended for five days by Mr. Merchant. . . . As a consequence, we are requesting that, if possible, you assign a member of your agency, who is not subordinate to Mr. Merchant, to review the appropriateness of the suspension at issue. . . ."

[9] The plaintiff provided the Superior Court with two newspaper articles in support of his allegations. The Superior Court indicated that the information in the Connecticut Law Tribune article came from a complaint filed by the same person in a federal court case alleging civil rights violations against the plaintiff. The Superior Court indicated that the Hartford Courant article stated that the state ethics commission was investigating alleged misconduct on the part of the plaintiff. The Superior Court found that the plaintiff "has provided no proof that these articles were written as a result of the letter sent to the DPUC."

commission "blatantly and deliberately ignored the statutory mandate" when it divulged the existence of the complaint against him to the DPUC. The plaintiff asserts that this disclosure contributed to a media frenzy that subjected him to ridicule and pronounced his guilt before any proceeding was conducted.[10]

The plaintiff further asserts that this violation divests the commission of jurisdiction. Even assuming that the commission violated § 1-82a by divulging the fact that a complaint was filed against the plaintiff in its letter to the DPUC, the plaintiff has not provided nor are we aware of any authority that indicates that a violation of § 1-82a divests the commission of its jurisdiction to hear the matter.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *Raymond v. Rock Acquisition Ltd. Partnership*, 50 Conn. App. 411, 420, 717 A.2d 824 (1998); see also *State v. Leary*, 51 Conn. App. 497, 499, 725 A.2d 328 (1999); *Blakeney v. Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cummings v. Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Drabik v. East Lyme*, 234 Conn. 390, 400, 662 A.2d

---

[10] We note that the plaintiff did not present any evidence to corroborate these allegations or to show that he was prejudiced in his hearing.

118 (1995). In the absence of analysis, citation to legal authority and specific facts to support the allegations, we cannot conclude that the Superior Court abused its discretion.

## IV

The plaintiff next claims that the Superior Court improperly ruled that, pursuant to General Statutes § 1-82a (d) and (e), the commission was required to disclose the entire record including those allegations where the commission found that no probable cause existed. Specifically, the plaintiff argues that the commission violated § 1-82a (d)[11] by releasing to the public the result of its preliminary investigation and a copy of the entire complaint, both of which contained allegations for which no probable cause was found. The plaintiff further argues that this violation requires this court to vacate the decision of the commission. The commission responds that § 1-82a (e)[12] requires the commission to make public the entire record of its investigation after a finding of probable cause. We note that although this issue is one of statutory construction, we need not address it at this time because the plaintiff has not persuaded this court that the appropriate remedy is dismissal of the commission's decision.

In *In re Zoarski*, 227 Conn. 784, 794, 632 A.2d 1114 (1993), our Supreme Court determined that, even where it is arguable that public disclosures by a complainant of misconduct of a judge is inconsistent with General Statutes § 51–51*l* (a), "[t]he legislature has not . . . expressly imposed a sanction of dismissal of charges

[11] General Statutes § 1-82a (d) provides in relevant part: "If the commission makes a finding of no probable cause, the complaint and the record of its investigation shall remain confidential . . . ."

[12] General Statutes § 1-82a (e) provides in relevant part: "The commission shall make public a finding of probable cause not later than five business days after the termination of the investigation. At such time the entire record of the investigation shall become public . . . ."

for a violation of § 51-51*l* (a)." The court concluded that, "[b]ecause of the public interest in the proper disposition of charges of judicial misconduct, we will not infer that the legislature intended to make a complainant's noncompliance with § 51-51*l* (a) a basis for the automatic dismissal of ongoing judicial misconduct proceedings." Id. The court held that "[i]n the absence of allegation or proof that [the complainant's] public disclosures had any impact whatsoever on the fairness of the [judicial review] council's deliberations, dismissal of the charges was not required." Id., 794–95.

In this case, the complaint against the plaintiff alleged five separate violations of the ethics code by the plaintiff. While it is arguable that § 1-82a (e) intended the disclosure of the entire record only on the allegations where probable cause was found, the legislature has not expressly imposed a sanction of the dismissal of a commission decision for a violation of this section.

We recognize that in *In re Zoarski*, our Supreme Court did not address the consequences of a disclosure of pending judicial disciplinary proceedings by a member of the judicial review council or the council itself. See *In re Zoarski*, supra, 227 Conn. 794–95 n.14. In this case, the plaintiff failed to cite any authority to support his proposition that the disclosure of the entire record was a violation of the statute and failed to cite any authority to support his proposition that a violation required reversal because it affected the fairness of the commission's deliberations. The plaintiff's brief asserted only unsupported allegations without substantive discussion or analysis. We conclude that the rationale of our Supreme Court in *In re Zoarski* is applicable to the facts of this case. Id. As the court stated in *In re Zoarski*, supra, 794–95, "we will not infer that the legislature intended to make [the commission's] noncompliance with [the statute] a basis for the automatic dismissal . . . . In the absence of allegation or proof

that . . . [the disclosure] had any impact whatsoever on the fairness of the [commission's] deliberations, dismissal of the charges was not required." We cannot conclude, under the circumstances of this case, that the Superior Court abused its discretion in upholding the decision of the commission.

V

The plaintiff next claims that the Superior Court improperly held that the 1987 and 1991 versions of the Handbook for Appointed Officials were admissible as evidence before the commission and enforceable by the commission. Specifically, the plaintiff argues that because the " 'Handbooks' are only policy guidelines, with no force of law," they are not controlling or binding. The plaintiff further argues that, without the admission of these documents, the commission "could not have found probable cause to pursue . . . [the] violation of § 1-84 (c) . . . ." We disagree.

The following facts are relevant to the resolution of this issue. The handbooks at issue were prepared by the executive branch and were ordered promulgated by our governor. The purpose of the handbooks is to provide appointed officials with information on work policies, regulations and benefits. The handbooks provide that "[a]ppointed officials must follow the state Code of Ethics, which is explained in Conn. Gen. Statutes Chap. 10, Sec. 1-79 through 1-89." The plaintiff testified that he took vacation and sick time in reliance on the provisions of the handbook. His attorney also stated during the hearing that the handbooks were "totally relevant to this proceeding."

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In

reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *O'Brien* v. *Coburn*, 46 Conn. App. 620, 630–31, 700 A.2d 81, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997)." (Internal quotation marks omitted.) *Pacific Land Exchange* v. *Hunts*, 52 Conn. App. 362, 363–64, 727 A.2d 1281 (1999).

"Evidence is admissible only if it is relevant. *Tomlinson* v. *Board of Education*, 226 Conn. 704, 728, 629 A.2d 333 (1993). Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . *State* v. *Cosby*, 44 Conn. App. 26, 31, 687 A.2d 895 (1996), cert. denied, 240 Conn. 910, 689 A.2d 474 (1997). It is well settled that questions of relevance are committed to the sound discretion of the trial court. *State* v. *Weidenhof*, 205 Conn. 262, 277, 533 A.2d 545 (1987). *State* v. *Lyons*, 43 Conn. App. 704, 707, 686 A.2d 128 (1996), cert. denied, 240 Conn. 906, 688 A.2d 335 (1997)." (Internal quotation marks omitted.) *First Federal Bank, FSB* v. *Gallup*, 51 Conn. App. 39, 41–42, 719 A.2d 923 (1998).

The former commissioner of the department of administrative services testified that the handbook was a direct order of our governor and applied to all appointed officials. The handbook states that it is "a resource regarding the general acceptable behavior and duties of appointed officials." The handbook foreword states that it is "designed to provide some information about work policies, regulations and benefits regarding your appointment." The plaintiff testified that he took

vacation and sick time in reliance on the provisions of the handbook, thereby accepting the handbook as a document that sets forth his rights as an employee of the executive branch of the state government. The handbook not only sets forth the rights of supervisors, but also their responsibilities, providing that "[i]f you are absent for an entire day, it must be for either vacation, personal or sick leave." Another responsibility is that "[a]ppointed officials must follow the state Code of Ethics, which is explained in Conn. Gen. Statutes Chap. 10, Sec. 1-79 through 1-89."

The commission, in enforcing the ethics code, had a right to rely on the "policies, regulations and benefits" applicable to appointed officials as set forth in the handbook published and distributed on the orders of our governor, who is the appointing authority. We conclude that the handbook was relevant to the matter before the court.

The plaintiff further argues that the handbooks are only guidelines because they are not creations of statute or duly adopted regulations and, as such, have no force of law and are not enforceable against him. The plaintiff's argument, however, is misplaced. The commission determined that the defendant violated § 1-82 (a) by using his office for personal gain. As evidence of that violation, the commission admitted into evidence the handbooks to show that the plaintiff had breached the policy guidelines and, as a result, would have been entitled to financial gain to which he is not otherwise entitled. Therefore, the commission is not enforcing the guidelines in the handbooks against the plaintiff, but, instead, is using the handbooks as evidence of the violation of the ethics code. The question, therefore, is one of relevancy. Because the handbooks were relevant, the Superior Court did not abuse its discretion in admitting them into evidence.

## VI

The plaintiff next claims that the Superior Court improperly found that the decision of the commission was supported by substantial evidence. Specifically, the plaintiff claims that his time records accurately reported the hours that he worked. We disagree.

Under the UAPA, "[w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Citations omitted; internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 36, 716 A.2d 78 (1998).

The Superior Court found that the record contains the following undisputed facts. The plaintiff attended the Masters and Walker Cup golf tournaments between 1992 and 1994. On the days that he attended the tournaments, the plaintiff did not go to the office of consumer counsel. The handbooks provide that "[i]f you are absent for an entire day, it must be for either vacation, personal or sick leave." The plaintiff, who was absent for the entire day, claimed several hours as work time instead of charging a full day of vacation time. As the head of the office of consumer counsel, the plaintiff submitted his time sheets and vouched for their accuracy. Because the plaintiff received partial pay for a day spent out of the office and accrued vacation time for a full day, which has a monetary value upon leaving

the appointment, the commission found that the plaintiff used his public office to obtain financial gain in violation of § 1-84 (c). We conclude that the administrative record affords a substantial basis of fact from which the commission reasonably could infer that the plaintiff violated § 1-84 (c). Therefore, the Superior Court did not abuse its discretion in upholding the commission's decision.

## VII

The plaintiff finally claims that the Superior Court improperly ruled that the multiplicity of the procedural errors set forth by him did not deny him an opportunity to receive a fair hearing, and did not violate his due process rights under the United States and the Connecticut constitutions.[13] Specifically, the plaintiff argues that the commission's repeated failure to comply with and strictly to adhere to the statutory requirements under the statute damaged his good name and reputation in his position as consumer counsel and impaired his employment opportunities in the private practice of law upon retirement from government service. The plaintiff further argues that the procedural errors warrant that this court vacate the commission's decision. We disagree.

"The fourteenth amendment to the United States constitution provides that the 'State [shall not] deprive any person of life, liberty, or property, without due process

---

[13] Because the plaintiff failed to offer a separate analysis under the state constitution, "[w]e, therefore, choose to consider the claim solely under the federal constitution." *State* v. *Garvin*, 43 Conn. App. 142, 146 n.5, 682 A.2d 562 (1996), aff'd, 242 Conn. 296, 699 A.2d 921 (1997). In any event, "[o]ur Supreme Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meanings and impose similar limitations. *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982)." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 388, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997).

of law . . . .' In order to prevail on his due process claim, the plaintiff must prove that: (1) he has been deprived of a property interest cognizable under the due process clause; and (2) the deprivation of the property interest has occurred without due process of law." *Tedesco* v. *Stamford*, 222 Conn. 233, 241, 610 A.2d 574 (1992). " '[D]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " (Citation omitted.) Id., 242.

The procedural protections due to the plaintiff are established by the UAPA. The trial court's review of the plaintiff's claim is limited by the UAPA. In this case, the plaintiff argues that the procedural errors warrant that the commission's decision be vacated. General Statutes § 4-183 (j) provides that "[t]he court shall affirm the decision of the agency unless the court finds that the substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (3) made upon unlawful procedure . . . ." "[N]ot all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown." (Internal quotation marks omitted.) *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 97, 596 A.2d 374 (1991). "An administrative proceeding is not 'tainted' by procedural irregularities unless substantial rights of the parties have been prejudiced." *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 69 n.5, 627 A.2d 1373 (1993), aff'd, 229 Conn. 592, 643 A.2d 233 (1994).

Even assuming that the commission committed all of the procedural errors alleged, the plaintiff failed to show that his substantial rights were prejudiced by the actions of the commission. In the absence of showing prejudice, the plaintiff failed to show that his hearing

was tainted by the alleged errors and that the fairness of the hearing was compromised. Under these circumstances, we will not vacate the decision of the commission.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[14] Insofar as the defendant argues that the cumulative effect of the errors was harmful and requires that the decision of the commission be vacated, we note that because, where appropriate, we have considered the prejudice of the alleged errors individually and concluded that the defendant has not shown that his rights were substantially prejudiced, we need not address this claim. See *State* v. *Robinson,* 227 Conn. 711, 747, 631 A.2d 288 (1993) (court declined to create new constitutional claim in which totality of alleged constitutional error is greater than sum of its parts).

