### IN RE SHYLIESH H.*
### (AC 19433)

Foti, Schaller and Vertefeuille, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 27—officially released December 21, 1999

*Raymond J. Rigat*, for the appellant (respondent father).

*Jane R. Rosenberg*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Jed N. Schulman*, for the minor child.

### Opinion

VERTEFEUILLE, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his minor daughter, Shyliesh H. On appeal, the respondent claims that the trial court improperly (1) found that he had failed to achieve

---

[1] The respondent mother has not appealed from the trial court's judgment terminating her parental rights. We refer in this opinion to the respondent father as the respondent.

sufficient personal rehabilitation within the meaning of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B),[2] (2) found that termination of his parental rights was in the best interest of Shyliesh, (3) terminated his parental rights because § 17a-112 (c) (3) (B) is unconstitutionally vague on its face and as applied to the specific facts of this case and (4) terminated his parental rights because the termination violated his right to substantive due process under both the federal and state constitutions. We affirm the judgment of the trial court.

In a comprehensive memorandum of decision, dated February 26, 1999, the trial court found the following facts. Shyliesh was born on July 31, 1996. Her parents, who never married, were not living together at the time of her birth. Shyliesh's mother suffers from schizophrenia. Less than one week after Shyliesh's birth, her mother had to be hospitalized at a mental health care facility. The department of children and families (department) invoked a ninety-six hour hold with respect to Shyliesh, then returned Shyliesh to the care of her mother and maternal grandmother approximately two weeks later, after the mother was discharged from the hospital.

When the mother resumed Shyliesh's care, she did not hold or clothe the baby properly and permitted the baby to cry unattended for hours. The mother also neglected herself, missing outpatient treatment sessions and failing to cooperate with nurses who were to monitor her medications. In November, 1996, Shyliesh's

---

[2] General Statutes (Rev. to 1997) § 17a-112 provides in relevant part: "(c) The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

pediatrician became concerned about her failure to gain weight and notified the department of his concern. On January 2, 1997, the department attempted a home visit to determine whether Shyliesh was being fed properly. The mother refused to give access to Shyliesh and acted irrationally. The mother again was admitted to the mental health care facility, and the department obtained an ex parte order for custody of Shyliesh.

The trial court, pursuant to General Statutes (Rev. to 1997) § 46b-129, set forth specific steps for both parents to take to facilitate Shyliesh's return. On January 17, 1997, both parents and the maternal grandmother entered into a service agreement with the department. Both the agreement and the specific steps required the respondent to cooperate with a psychological evaluation, to maintain reasonable visitation, to avoid further involvement with the criminal justice system and to attend parenting classes. On January 24, 1997, the trial court confirmed the order of temporary custody and transferred custody of Shyliesh to her maternal grandmother subject to the department's protective supervision. The trial court also confirmed that Shyliesh was to spend alternate weekends with the respondent, who offered himself as a placement resource for Shyliesh. Despite making this offer, the respondent was inconsistent in his visitation. He also failed to attend the parenting classes and a psychological evaluation. The respondent did not acquire a crib for the baby and did not demonstrate any understanding of the mother's psychiatric condition or needs.

Because of continuing concerns about Shyliesh's suboptimal weight, she was referred to a pediatric gastroenterologist. The mother and maternal grandmother missed four of the eight scheduled appointments. The respondent did not participate in the appointments. Shyliesh was diagnosed with nonorganic "failure to thrive," a condition of low body weight due to inade-

quate care and insufficient calorie intake that can have an adverse affect on brain development.

On May 30, 1997, the department invoked its third ninety-six hour hold and Shyliesh was admitted to a hospital for the insertion of a nasogastric tube to facilitate feeding. The department once again obtained an ex parte order for temporary custody of the child. In mid-June, Shyliesh was placed in the home of a foster parent licensed to provide foster care for a medically fragile child. Shyliesh's condition began to improve; she gained weight at a normal rate and the nasogastric tube was removed. Shyliesh became comfortable in her new home and, by early 1998, she was no longer considered medically fragile.

When Shyliesh entered foster care, the department established weekly visitation for both parents. The respondent frequently missed his scheduled visitation in the latter half of 1997. His visitation increased in 1998, but the department was concerned that Shyliesh did not smile or seem responsive during the visits. Shyliesh also occasionally threw temper tantrums prior to the visits.

In March, 1998, and again in November, 1998, Shyliesh was evaluated by Lisa Namerow, a board certified child psychiatrist. Namerow diagnosed Shyliesh as having reactive attachment disorder, a limitation in a child's ability to attach to and interact with the adults around her. The disorder results from disturbed caretaking. Namerow found that when Shyliesh was in the presence of adults other than her foster mother, she showed a flat affect or "frozen watchfulness," quietly watching what was transpiring around her without engagement or movement. In November, Namerow observed Shyliesh in the presence of her foster mother and found that Shyliesh's behavior, language and motor activity

were much more expansive when she was in her foster mother's presence. Shyliesh's behavior changed dramatically, however, when her foster mother left the room. Namerow concluded that Shyliesh had formed an attachment to her foster mother. Namerow also determined that Shyliesh was genetically at risk for the development of schizophrenia.

After six days of trial, the trial court granted the coterminous petitions for neglect and termination of parental rights filed by the commissioner of children and families (commissioner). This appeal from the termination of the respondent's parental rights followed. The trial court also denied the paternal grandmother's request for a transfer of guardianship.

## I

The respondent first claims that the trial court's finding that he failed to achieve the degree of personal rehabilitation required under § 17a-112 (c) (3) (B) was clearly erroneous. We disagree.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 705–706, 741 A.2d 873 (1999).

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Marvin M.*, 48 Conn. App. 563, 578, 711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998). The statute requires the court to find by clear and convincing evidence that the parent's level of rehabilitation is less than that which would encourage a belief that he or she can assume a responsible position in the child's life within a reasonable time. See *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).

In this case, there was ample evidence to support the trial court's finding that the respondent failed to achieve rehabilitation. There was clear evidence that the respondent failed to comply with his service agreement with the commissioner and with the specific steps entered by the court in January, 1997. He failed to attend psychological evaluations scheduled for him in May and August, 1997. Only in June, 1998, after the commissioner filed the petition for termination, did the respondent undergo the evaluation. Robert Meier, however, the psychologist who performed the evaluation, questioned the respondent's reliability in responding to test materials. Also, Meier testified at trial that the respondent failed to disclose fully the extent of his criminal record.

The respondent also failed to comply with the requirement that he take parenting classes. He failed to take the classes during 1997 and enrolled in 1998 only after the commissioner filed the petition to terminate his parental rights. Also, the respondent failed to tell his

instructor that Shyliesh had special needs and testified that he saw no point to the classes. A social worker from the department testified that the respondent's parental skills actually deteriorated after he completed the parenting course.

The respondent did not comply with the weekly visitation requirement and visited only seven times between June and December, 1997. Although the respondent increased his visitation in 1998, he actually visited with Shyliesh for only 60 percent of the scheduled visits and many times brought her home one day early because he had no crib for her.

The respondent also failed to avoid further involvement with the criminal justice system as required by the service agreement. He was arrested twice in 1997 after the department took custody of Shyliesh, once for driving under suspension and once for failure to appear in court. The respondent was incarcerated in July and October, causing him to miss visitation with Shyliesh. Furthermore, the respondent admitted at trial that he continued using drugs until the commissioner filed the termination petition.

The respondent's failure to achieve personal rehabilitation was also illustrated by his lack of understanding of Shyliesh's medical and psychiatric condition. Although the respondent testified that he loved Shyliesh, the trial court found that he lacked the insight and responsibility to cope with her significant psychiatric disorder. The respondent testified at trial that he was unaware of Shyliesh's special needs, including her developmental delays. At trial, he could not name any of her pediatricians, past or present. The respondent was unaware of Shyliesh's high risk of schizophrenia until trial and even then he did not have questions about her prognosis.

The respondent relied on a written report prepared by Meier in June, 1998, as evidence of his rehabilitation. Despite concerns about the respondent's lack of motivation and unwillingness to assume responsibility, Meier recommended in June, 1998, that the respondent be given a three month trial period during which he could have additional interaction with Shyliesh. At the time of trial, over six months later, however, Meier recommended that no additional time be permitted for the respondent's rehabilitation. The respondent's reliance on the superseded June report, therefore, is misplaced.

The respondent also argues that the trial court's finding that he failed to achieve rehabilitation within the meaning of § 17a-112 (c) (3) (B) was clearly erroneous because his mother could have been a placement resource for Shyliesh and could have supported his efforts to maintain a relationship with her. We do not agree.

The respondent's mother first saw Shyliesh about one month after her birth and, thereafter, she had contact with Shyliesh on weekends when the respondent had Shyliesh at the home he shared with his mother. After Shyliesh went into foster care, however, the respondent's mother had very little contact with Shyliesh, seeing her only twice in 1997 and three times in 1998. Moreover, she testified that she was unfamiliar with Shyliesh's developmental delays and special emotional and psychological needs. By failing to appeal from the court's denial of her request for guardianship of Shyliesh, the respondent's mother has relinquished any claim with respect to the child.

The trial court found that there was clear and convincing evidence of the respondent's failure to achieve the degree of personal rehabilitation required by § 17a-112 (c) (3) (B). Upon review of the facts, we conclude that the trial court's finding was not clearly erroneous.

## II

The respondent next claims that the trial court's finding that termination of his parental rights was in the best interest of the child was clearly erroneous. We are not persuaded.

Section 17a-112 (c) requires that to terminate parental rights, the trial court must find by clear and convincing evidence that termination is in the best interest of the child. In this case, the trial court found that termination was in Shyliesh's best interest, in part on the basis of testimony concerning Shyliesh's special needs.

Namerow testified that Shyliesh is a severely impaired child whose prognosis for overcoming her attachment disorder is guarded. Namerow emphasized the significance of Shyliesh's attachment to her foster mother and opined that once a child with an attachment disorder forms an attachment, it should not be disturbed. Further, Namerow testified that the fact that a child has formed one attachment does not mean that she will be able to attach to another person. Namerow strongly recommended that Shyliesh remain permanently with her foster mother, who wants to adopt her, because Shyliesh's attachment to her foster mother is key to her psychological well-being. She further testified that Shyliesh's genetic predisposition to schizophrenia might be triggered by a transition of caretakers.

Meier, the court-appointed psychologist, also concurred at trial that Shyliesh's current home should be made her permanent home. Meier further testified that it would not be in Shyliesh's best interest to allow any further time to explore placement with the respondent.

Psychological testimony from professionals is appropriately accorded great weight in termination proceedings. *In re Kezia M.*, 33 Conn. App. 12, 22, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).

Our thorough review of the trial court record indicates that the trial court correctly concluded that the department had established by clear and convincing evidence that it was in Shyliesh's best interest that the respondent's parental rights be terminated.

### III

The respondent next claims that the trial court improperly terminated his parental rights because the statutory requirement that he achieve rehabilitation pursuant to § 17a-112 (c) (3) (B) is unconstitutionally vague on its face and as applied to the facts of this case. We disagree.

The respondent's brief gives only cursory attention to the vagueness doctrine as applied to the facts of this case. We therefore deem this claim abandoned. See *State* v. *Dumas*, 54 Conn. App. 780, 794, 739 A.2d 1251, cert. denied, 252 Conn. 903, 743 A.2d 616 (1999). Our analysis consequently will be limited to whether the statute is unconstitutionally vague on its face.

The respondent admits that he did not raise the vagueness claim in the trial court, but he seeks review of the issue under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Our Supreme Court held in *Golding* that a party can prevail on an issue not preserved at trial only if all of the following four conditions are met: (1) the record is adequate to review the claim; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the appellant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. Id. If any one of these conditions is not met, the appellant cannot prevail. Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate

to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Manfredi*, 17 Conn. App. 602, 621, 555 A.2d 436 (1989), aff'd, 213 Conn. 500, 569 A.2d 506, cert. denied, 498 U.S. 818, 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990). *Golding* applies to civil as well as criminal cases. See *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 300, 541 A.2d 873 (1988).

In this case, the first two prongs of *Golding* are satisfied. First, the record is adequate to review the respondent's claim. Second, a claim concerning the termination of a respondent's parental rights is of constitutional magnitude in that "[t]he right to the integrity of the family is among the most fundamental rights guaranteed by the fourteenth amendment." *State* v. *Anonymous*, 179 Conn. 155, 162, 425 A.2d 939 (1979). The respondent has failed, however, to meet the third requirement of *Golding* that a constitutional violation clearly exists and clearly deprived him of a fair trial.

Legislative enactments carry with them a strong presumption of constitutionality, and a party challenging the constitutionality of a validly enacted statute bears the weighty burden of proving unconstitutionality beyond a reasonable doubt. *State* v. *Angel C.*, 245 Conn. 93, 102, 715 A.2d 652 (1998). In analyzing the constitutionality of a statute, the court will "read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994).

"The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution." *Packer* v. *Board of Education*, 246 Conn. 89, 98, 717 A.2d 117 (1998). The doctrine is based on two legal principles. The first requires "fair warning . . . in language that the common world will understand, of what

the law intends to do if a certain line is passed." (Internal quotation marks omitted.) Id., 99. The second principle requires that statutes establish explicit minimum standards to govern their enforcement. Id., 100.

Section 17a-112 (c) (3) (B) provides the trial court with the authority to terminate a parent's parental rights when the parent "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." The respondent's attack on the statute focuses on the use of the personal rehabilitation standard, claiming that it is susceptible to "multifarious interpretations." This argument ignores the explicit statutory requirement that a parent be given "specific steps" to accomplish to facilitate the return of the child. General Statutes § 46b-129 (b). General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B) requires that the "child . . . has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . ." In the prior neglect proceeding conducted pursuant to § 46b-129, where the court places the child in the custody of a suitable agency or person, "the court shall provide to the commissioner and the parent of the child . . . specific steps which the parent may take to facilitate the return of the child . . . to the custody of such parent. . . ." General Statutes (Rev. to 1997) § 46b-129 (b).[3] Personal rehabilitation, therefore, is to be determined, in part, by compliance with those specific steps, which give the parent fair warning of what is required. Moreover, the

---

[3] General Statutes (Rev. to 1997) § 17a-112 was amended effective July 1, 1998, to include the "specific steps" language in subsection (c) (3) (B) (2). Public Acts 1998, No. 98-241, § 8. General Statutes § 17a-112 (c) (3) (B) (2) now provides that in a proceeding to terminate parental rights on the ground that the parent has failed to achieve sufficient personal rehabilitation, "such parent [must have] been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 . . . ."

necessary degree of personal rehabilitation must be determined with reference to "the age and needs of the child . . . ." General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B). This provision establishes explicit standards for the enforcement of the statute.

In analyzing the constitutionality of a statute, we must also take into account any interpretations of the statute by our Supreme Court and this court. See *State* v. *Indrisano*, supra, 228 Conn. 805. In *In re Eden F.*, supra, 250 Conn. 706, our Supreme Court recently interpreted § 17a-112 (c) (3) (B), explaining that "[p]ersonal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . Rehabilitate means to restore [a handicapped or delinquent person] to a useful and constructive place in society through social rehabilitation. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Citation omitted; internal quotation marks omitted.) This court recently explained that "in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." *In re Danuael D.*, 51 Conn. App. 829, 840, 724 A.2d 546 (1999).

We conclude that § 17a-112 (c) (3) (B) is not void for vagueness. The statute as written and as interpreted by the Supreme Court and this court provides fair warning of the conduct necessary for personal rehabilitation and further provides minimum guidelines for enforcement of the statute. The respondent has failed to meet the third requirement of *Golding* that a clear constitutional violation exists and his claim must, therefore, fail.

IV

The respondent's final claim is that the termination of his parental rights violates his right to substantive due process under both the federal and state constitutions because the department failed to demonstrate a compelling state interest in terminating his rights. We decline to address this claim.

The respondent purports to brief these two constitutional claims in two and one-half pages of his brief. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999). Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned. Id. The respondent's brief with respect to this final claim is inadequate and is deemed abandoned.

The judgment is affirmed.

In this opinion the other judges concurred.