[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a municipal property tax appeal in which the owner of the property, Gretchen Chipperini[1], has appealed the decision of the Groton Board of Assessment Appeals denying her claim that her house at 23 Liberty Street was overvalued by the assessor on the revaluation date of October 1, 1992.
On September 29, 1989, the plaintiff purchased 23 Liberty Street with her parents, Irvin and Inga Chipperini, who were given a life use. The purchase price for the property was $417,500. At the time of purchase, the subject property was not in good condition. The plaintiff had purchased the property with the expectation of restoring this uniquely designed house.
The subject property is a single family house sitting on .49 acres of land. The house was built around 1910 and is a two and a half story gambrel cross Dutch colonial with a detached three door garage. The half story of the house was unfinished at the time of the revaluation. The house had four bedrooms and two baths at the time of the revaluation. The subject contained ornate woodwork, which was being restored by the plaintiff. The plaintiff found elements of the house in several pages of houses CT Page 16736 shown in the 1910 edition of the Sears Roebuck catalogue. The plaintiff testified that she was under the impression that she was purchasing a unique house and intended to restore it faithfully to its original condition. After seeing the house in the catalogue, she discovered that the house was not unique and quite common throughout the country.
The subject is located within the historic Mystic district. Historic Mystic is an appealing waterfront village located in the eastern section of the town of Groton. Mystic village contains many historic and architecturally appealing 18th and 19th century dwelling structures. The village of Mystic contains the historic Mystic seaport.
The Groton assessor determined that the fair market value of the subject property was $337,400 on the grand list of October 1, 1992. This valuation was arrived at through a town-wide revaluation process conducted by the town for the October 1, 1992 grand list. The town engaged the services of MMC Company ("MMC"), a property revaluation firm, to do the valuation of all real estate within the town of Groton. MMC inspected all of the property in the town, when given permission to do so, reviewed all arms length real estate transactions in the town, and did a statistical analysis of these sales. MMC developed a calibrated model which was checked against the sales to assessment ratio of the properties, and then reviewed by computer. Notices of assessments were sent to taxpayers by MMC and hearings were held by MMC to make changes that were brought to the attention of MMC by the taxpayer. The assessor certified the grand list for October 1, 1992 from these final assessments.
On June 24, 1993, the assessor's office issued a certificate of change adjusting the assessed value of the plaintiff's property down to $181,090, retroactive to October 1, 1992, based upon a correction to the square footage of the house, a change to the floor type from "hardwood" to "pine/soft wood," and a change to the third level description from "finished half story" to "unfinished half story." (Plaintiff's exhibits O, P.) The assessed value after the adjustment represents a fair market value of $258,700.
The plaintiff's main complaint is that MMC incorrectly listed her property as having three bathrooms when it had only two, and that the attic was unfinished at the time of the revaluation. The plaintiff also objected to MMC's statistical grading of factors CT Page 16737 that went into its determination of value.
The plaintiff's real estate expert appraiser, F. Jerome Silverstein, used an unorthodox process in arriving at his finding of fair market value of the subject on October 1, 1992. Silverstein used the same method as used by MMC, except Silverstein modified the statistics used by MMC based on his view of the condition of the subject property. Silverstein then went through the same process used by MMC and arrived at a fair market value for the subject property of $169,892. However, Silverstein did not do a survey of sales of comparable properties in Groton as did MMC, but rather simply took the statistics used by MMC for the subject property and changed these statistics to meet with his own judgment as to what the statistics should show. As an example, Silverstein noted that MMC had coded the subject property as 2.5 referring to two and one-half stories in the house. Silverstein, using MMC's guide, determined that the subject had two stories plus an unfinished attic. Silverstein noted that MMC had classified the subject as an ornate mansion with a unique design. Based on MMC's guidelines, Silverstein found that the subject was neither a luxury building nor a unique design. Silverstein concluded that a luxury house would have one bathroom for each bedroom, whereas the subject had four bedrooms and two bathrooms. Silverstein also challenged MMC's use of gross square foot building area, and the number of bathrooms (Silverstein found two bathrooms whereas MMC had three bathrooms in the subject).
Prior to October 1, 1992, the plaintiff took out a restoration permit to do substantial restoration work on the subject. The plaintiff added a cupola to the third floor of the house which gave a wide view of the surrounding area. The plaintiff took out a building permit for a bathroom in the basement in 1990. This bathroom apparently was not installed prior to the revaluation date. On March 15, 1991, the plaintiff took out a general restoration and repair permit for the house. On October 1, 1991, the restoration was 50% complete. On September 29, 1992, the restoration was 80% complete.
Much of the problem in this case came from the plaintiff's denial of access to the premises to MMC representatives for an inspection of the property prior to the revaluation date. Lacking access to the subject premises, MMC was left to consider the building permits taken out on the property and a visual inspection from the outside. This lack of cooperation was carried CT Page 16738 over to this action when Francis J. Buckley III, the town's appraiser, was denied daylight access to the subject to render his appraisal.
Following the revaluation of the subject property on October 1, 1992, the plaintiff complained to the assessor that there were inaccuracies on the property record card regarding various elements of the subject house. The assessor corrected the deficiencies pointed out by the plaintiff, such as the non-existence of the bathroom in the basement and the condition of the attic, resulting in the 1993 adjustment to the assessment described above.
Although Silverstein was of the opinion that there were no comparable sales with which to compare to the subject[2], Buckley, the town's appraiser, considered three comparables located in the historic Mystic district in which the subject is located. Based on these three sales, with most reliance placed on the sale of 169 High Street, Buckley concluded that the fair market value of the subject as of October 1, 1992, was $338,000. We find Buckley's analysis of the comparable sales selected and his opinion of value to be credible. However, while we find that Buckley's appraisal is credible evidence supporting the town's valuation, we feel compelled to address the process used by the plaintiff in challenging the valuation of the subject property by the assessor.
An appeal to the Superior Court from the denial of a claimed overvaluation by the assessor pursuant to Connecticut General Statutes § 12-117a results in a trial de novo. Xerox Corp. v.Board of Tax Review, 240 Conn. 192, 204, 690 A.2d 389 (1997). On a tax appeal to this court, our sole function is to determine the fair market value of the subject property as of the last revaluation date. Ireland v. Town of Wethersfield, 242 Conn. 550,556, 698 A.2d 888 (1997). Our function is not to review the actions of the assessor or the board of assessment appeals, but rather to consider the evidence presented to the court that would assist the court in carrying out its statutory function which is to determine value. Id.
Before we can determine the fair market value of the subject property, we must first determine if the taxpayer has sustained his or her burden of establishing that the assessor has overvalued his or her property. Ireland v. Town of Wethersfield, supra, 242 Conn. 556. "If the trial court finds that the taxpayer CT Page 16739 has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone." Id., 557-58.
In considering value, three recognized methods are used: (1) the comparable sales approach; (2) the income approach; and (3) the cost approach. Four D's, Inc. v. Mattera, 25 Conn. App. 308,315, 594 A.2d 484 (1991). Silverstein used none of these three approaches to value. Silverstein simply used the same formula as used by MMC and replaced the MMC's data with his own subjective figures. This process utilized by the plaintiff in her attempt to show overvaluation seems to advocate a review more akin to an administrative appeal, rather than the trial de novo required by General Statutes § 12-117a. In an administrative appeal, the court reviews the action of the agency, and the sole function of the trial court is to determine if the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Department of Public Safety v. Freedom of InformationCommission, 51 Conn. App. 100, 104, 720 A.2d 268 (1998). In an administrative appeal, the trial court may not retry the case. Id. In a trial de novo, the court is not limited to a review of the actions of the assessor and board of assessment appeals, but rather is charged with determining if the property was overvalued, and, if so, what is the true fair market value. "In a de novo proceeding, the trier of fact makes an independent determination of the matters on which the appeal was taken without regard for the action or decision of the lower tribunal."Konover v. West Hartford, 242 Conn. 727, 741, 699 A.2d 158
(1997). While the plaintiff in this case has attempted to show overvaluation by reviewing the actions of the town in its revaluation process and pointing out alleged inaccuracies, we are unpersuaded by either the plaintiff's claim or Silverstein's selection of an unorthodox method of valuation to establish that the assessor has overvalued the plaintiff's property on the list of October 1, 1992. The plaintiff has not met her burden of showing that the property was overvalued by the assessor.
Accordingly, we find no credible basis upon which to determine that the subject property was overvalued on October 1, 1992. Judgment may enter in favor of the defendant dismissing this appeal without costs to either party.
Arnold W. Aronson Judge Trial Referee CT Page 16740