IN RE GABRIELLE M.*
(AC 30391)

DiPentima, Gruendel and Alvord, Js.

Argued October 20—officially released December 8, 2009

*Traci J. Valery*, for the appellant (respondent mother).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Thomas Mitola*, for the minor child.

*Opinion*

PER CURIAM. The respondent mother[1] appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Gabrielle. The respondent claims that the court improperly found that

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] The court also terminated the parental rights of the child's father, whose identity is unknown. He has not appealed from the judgment. We therefore refer to the respondent mother as the respondent in this opinion.

(1) the department of children and families (department) had made reasonable efforts to reunify the child with the respondent, (2) she had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the child's life and (3) the termination of parental rights was in the child's best interest.

The following facts, found by the court, and procedural history, are relevant to our review of the respondent's claims. The respondent has a history of serious mental health issues, homelessness, domestic violence, anger management issues and inadequate legal income. The child was born on October 16, 2001. In March, 2006, she was adjudicated neglected but permitted to live with the respondent under six months of protective supervision. In the summer of 2006, however, the respondent hid her whereabouts and the whereabouts of the child from the department.[2] The respondent's disappearance violated the court-ordered specific steps and, as a result, custody of the child was transferred temporarily to the child's adult sister. The sister, however, left the child with an unauthorized caretaker, and, on November 7, 2006, the department removed the child from the sister's care.[3] On November 8, 2006, an order of temporary custody entered in favor of the petitioner, the commissioner of children and families, and, on March 20, 2007, the child was committed to the petitioner's care. She was placed in a preadoptive foster home in May, 2007. On November 14, 2007, the petitioner filed

---

[2] The department believed that the respondent had left the state with the child. The respondent maintained that she was in New Haven but homeless and living in a motel. She said that she was afraid to notify the department of her housing situation for fear of losing custody of her child.

[3] General Statutes § 17a-101g permits the petitioner to remove a child from unsafe surroundings under a ninety-six hour hold.

the present petition pursuant to General Statutes § 17a-112[4] to terminate the respondent's parental rights.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Zion R.*, 116 Conn. App. 723, 732–33, 977 A.2d 247 (2009).

Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. *In re Jorden R.*, 293 Conn. 539, 558, 979 A.2d 469 (2009). "A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity

---

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 558–59.

The respondent first claims that the court improperly found that the department made reasonable efforts to reunite her with her child. In particular, she argues that the department's suspension of supervised visitation[5] interfered with reunification efforts. She maintains that the department should have sought a second opinion regarding the propriety of continued visitation or attempted to find an alternative supervised visitation facility. We disagree.

"[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004). In this case, the record reflects the following efforts by the department. The department offered the respondent numerous services to facilitate reunification, including supervised visitation. The respondent, however, largely failed to take advantage of these programs. After supervised visits were suspended, the department referred the respondent to several mental health facilities for diagnosis and treatment.

[5] Supervised visitation was suspended after an incident that occurred during a visit at the Boys and Girls Village in November, 2006. At the end of the supervised visit, the respondent refused to let go of her child while screaming that the department had killed one of the child's older sisters who was committed to its care. The child was distressed by these events, and her therapist from the Boys and Girls Village recommended that visitation with the respondent be suspended until the respondent began mental health treatment, complied with her medication regime and received safety clearance from her treating clinician. The respondent denied that she ever made such statements.

The respondent failed to cooperate with treatment providers.[6] She was discharged prematurely by two mental health facilities for noncompliance. Despite multiple psychiatric hospitalizations[7] and the recommendations of her therapist, the respondent continued to deny that she was delusional or psychotic and needed treatment.

Additionally, and contrary to the respondent's contention, the department did refer the respondent to an alternative visitation facility. Like the Boys and Girls Village, which previously had suspended visitation; see footnote 5 of this opinion; the new facility, R-Kids, would not allow the respondent to begin its parenting program until she obtained clearance from her therapist. The record supports the court's finding that the department made reasonable efforts to reunify the petitioner with her child.[8]

The respondent next claims that the court improperly determined that she had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3). She argues that in making its determination, the court gave too much credit to a psychologist's evaluation and not enough credit to the fact that she recently had obtained an apartment and had begun to receive

---

[6] The respondent also refused to sign the release forms that the department required to assess her progress, if any, and to seek further help on her behalf.

[7] The respondent had four or five psychiatric hospitalizations from October, 2006, to October, 2008, and was diagnosed as suffering from some form of schizophrenic episodes.

[8] We also note that the respondent does not challenge the court's finding by clear and convincing evidence that she is either unable or unwilling to benefit from reunification efforts. See *In re Shaiesha O.*, 93 Conn. App. 42, 47, 887 A.2d 415 (2006) ("Section 17a-112 [j] [1] requires the court to make a finding by clear and convincing evidence in the adjudicatory phase concerning the reasonable efforts made by the department . . . to reunify the child with the parent as a prerequisite to terminating parental rights. . . . *A court need not make that finding, however, if the evidence establishes that the parent is unable or unwilling to benefit from reunification efforts* . . . ." [Emphasis added; internal quotation marks omitted.]).

counseling.[9] Her arguments are without merit. "The psychological testimony from professionals is rightly accorded great weight in termination proceedings." (Internal quotation marks omitted.) *In re Kezia M.*, 33 Conn. App. 12, 22, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). Moreover, "[p]ersonal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Zion R.*, supra, 116 Conn. App. 733. Although the respondent's recent strides are encouraging, they are not enough. See *In re Shyliesh H.*, 56 Conn. App. 167, 180, 743 A.2d 165 (1999) ("in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue"). The trial court's findings on this point were proper.

Finally, the respondent claims that the court improperly found that termination was in the child's best interest. Specifically, she takes issue with the court's determination that permanency, consistency and stability of care necessitated the termination of her parental rights. The respondent argues that she is capable of immediately assuming care of the child and providing her with a stable living environment. Her position is not supported by the record. In contrast, there is extensive evidentiary support for the court's conclusion that termination is in the best interest of the child.

The judgment is affirmed.

---

[9] The respondent had lived in four or five different places between November, 2006, and November, 2007, but obtained an apartment in April, 2008, under section 8 of the National Housing Act, as amended in 1974 and codified at 42 U.S.C. § 1437f. Though the respondent began attending therapy, she did so because it was required, and she continued to deny that she needed treatment.