IN RE SOLE S.*
(AC 30948)

Lavine, Beach and Alvord, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 19, 2009—officially released February 2, 2010

*Gary J. Wilson*, for the appellant (respondent father).

*Michael J. Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

ALVORD, J. The respondent father appeals from the judgment of the trial court terminating his parental rights as to his minor child, Sole.[1] He claims that the court improperly found that (1) the department of children and families (department) had made reasonable efforts to reunify the child with him, (2) he had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the child's life and (3) the termination of parental rights was in the child's best interest. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The child was born in April, 2000. In 2002, the respondent was incarcerated in Pennsylvania on charges related to the sale and possession of narcotics. While incarcerated, he left the child and her paternal half brother in the care of the child's mother. In August, 2002, and in January, 2003, the department received reports that the child's half brother was being physically abused. The ensuing investigation resulted in the arrest of the child's mother,[2] and on January 16, 2003, both children were removed from her care pursuant to a ninety-six hour hold.[3] On January 17, 2003, the child was adjudicated neglected,

---

[1] The court terminated the parental rights of the child's mother in the same proceeding. She has not appealed from the judgment of termination. We therefore refer to the respondent father as the respondent in this opinion.

[2] The child's mother was arrested for risk of injury to the child's half brother. She plead guilty to substituted offenses of reckless endangerment and assault in the third degree.

[3] General Statutes § 17a-101g permits the commissioner to remove a child from unsafe surroundings under a ninety-six hour hold.

and the petitioner, the commissioner of children and families, was granted temporary custody. In March, 2004, the respondent was released from prison. He resumed residence with the child's mother, and on March 22, 2004, the child was returned to the care and custody of her biological parents under orders of protective supervision. Seven months later, on November 17, 2004, the respondent again was arrested and incarcerated on drug related charges. The child remained in the care of her mother under protective supervision until January 20, 2006, when the department invoked a second ninety-six hour hold.[4] On February 3, 2006, the child was committed to the care, custody and guardianship of the petitioner. On March 14, 2008, the petitioner moved to terminate the respondent's parental rights pursuant to General Statutes § 17a-112 (j) (3) (B).[5] A judgment of termination was rendered on March 4, 2009, and this appeal followed.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by

[4] The second ninety-six hour hold was invoked after the department discovered that the child's mother moved in with a friend and left the child in the home of a relative who lived with a convicted sex offender.

[5] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling."[6] (Citations omitted; internal quotation marks omitted.) *In re Gabrielle M.*, 118 Conn. App. 374, 376–77, 983 A.2d 282 (2009).

The respondent first claims that the court improperly found that the department made reasonable efforts to reunify him with his child. He argues that the department's decision, in 2008, to discontinue its reunification efforts was unreasonable.[7] The record contains ample

[6] The respondent also urges us to apply the "scrupulous" standard of review set forth by Justice Schaller in *In re Melody L.*, 290 Conn. 131, 174–209, 962 A.2d 81 (2009) (*Schaller, J.*, concurring). It is not clear to us what "scrupulous review" means. Moreover, this purportedly more rigorous level of factual review has not been endorsed by our Supreme Court for termination of parental rights cases. Accordingly, we are without authority to apply it now. See *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24, 857 A.2d 354 ("It is axiomatic that . . . this court [is] without authority to overrule the decisions of our Supreme Court. In the absence of direction by our Supreme Court, inferior courts must continue to adhere to its decisions."), cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

[7] In a 2008 social study, the department recommended that reunification with the respondent was no longer appropriate because he had been in and out of prison for most of the child's life and had failed to refrain from criminal

support for the court's finding. "[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id., 377. In this case, the department *did* reunify the respondent with the child. In 2004, the child was returned to the care of the respondent for approximately seven months. The reunification was short-lived because the respondent was reincarcerated. The department nevertheless continued to offer the respondent parenting classes, anger management classes, substance abuse counseling, supervised visitation and assistance securing housing. Accordingly, the court's finding is not clearly erroneous.

The respondent next claims that the court improperly determined that he had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3).[8] Specifically, he argues that his compliance with the specific steps ordered by the court is indicative of his rehabilitation.[9] Although the record reveals that the respondent did comply with some of the steps ordered by the court, he was not able to meet all of its mandates. In particular, he was unable to find a living arrangement

---

involvement, obtain adequate housing and secure stable employment and income.

[8] The statute requires a court to find, by clear and convincing evidence, that the level of rehabilitation a parent has achieved "falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in [the] child's life." (Internal quotation marks omitted.) *In re Selena O.*, 104 Conn. App. 635, 646, 934 A.2d 860 (2007). In making its determination, "the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Internal quotation marks omitted.) Id.

[9] On November 20, 2003, January 24, 2006, and October 23, 2007, the court ordered several specific steps to enable the respondent to regain custody of the child including (1) secure and/or maintain adequate housing and legal income, (2) no substance abuse, (3) no further involvement with the criminal justice system and (4) comply with the conditions of probation or parole.

suitable for a child or to secure adequate legal income.[10] He also tested positive for cocaine in violation of his parole on December 8, 2008.[11] Consequently, the court's finding that the respondent had failed to achieve sufficient rehabilitation is supported by the record.

Finally, the respondent claims that the court improperly found that termination was in the child's best interest. He argues that the court did not give enough credit to the testimony and recommendations of the court-ordered evaluator, licensed psychologist, Tina Schiappa. We disagree. "The best interests of the child include the child's interests in sustained growth, development, well-being and continuity and stability of its environment." (Internal quotation marks omitted.) *In re Tremaine C.*, 117 Conn. App. 590, 600, 980 A.2d 330, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). Although Schiappa opined that, in light of the respondent's recent release and positive strides, it would be in the child's best interest to give him more time to achieve personal rehabilitation, she also stated (1) that if the respondent "fails to obtain housing in a reasonable amount of time or returns to jail for any violations of his probation or a new arrest, it would seem that long-term rehabilitation is unlikely," (2) that "continued placement with [the child's foster parent] appears to be in [the child's] best interests, whether it be long-term foster care or adoption" and (3) that "[i]f the parents are unable to rehabilitate in a timely manner, adoption would be in the best interest of this child."

---

[10] The respondent was released from prison to a halfway house on July 20, 2007. He remained in the halfway house until he became eligible for parole on March 17, 2008. Once paroled, the respondent moved to a sober rooming house. At the time of the termination hearing, the respondent worked part-time and still lived in the rooming house. He does not challenge the court's finding that the rooming house was not a suitable home for the child.

[11] The respondent will be on parole and subject to possible reincarceration until 2010.

Moreover, Schiappa testified that she considered six to twelve months from the date of her report to be a sufficient amount of time to reevaluate the respondent's progress. The termination hearing concluded on March 2, 2009, approximately seven months after Schiappa issued her written recommendations. By the conclusion of the proceeding, the respondent (1) had made no additional progress in obtaining appropriate housing, (2) had tested positive for cocaine and (3) had not been capable of independently caring for the child in over four years. As a result, we conclude that the court's finding that termination is in the child's best interest is not inconsistent with the evaluator's testimony and is adequately supported by the record as a whole.

The judgment is affirmed.

In this opinion the other judges concurred.