IN RE KEYASHIA C.*
(AC 30297)

Bishop, Alvord and Peters, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 11—officially released April 13, 2010

*Rosemarie T. Weber*, for the appellant (respondent mother).

*Susmita M. Mansukhani*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ALVORD, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Keyashia.[1] The respondent claims that the court improperly found that (1) the department of children and families (department) had made reasonable efforts to reunify her with the child and (2) she had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and

---

[1] The court terminated the parental rights of the child's father in the same proceeding. He has not appealed from the judgment of termination. We therefore refer to the respondent mother as the respondent in this opinion.

needs of the child, she could assume a responsible position in the child's life. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The child was born on May 26, 2005. On October 9, 2005, the respondent barricaded her bedroom door with a chair and climbed out the window, leaving her four month old child locked alone in the bedroom and the window open. Sometime later, the respondent's sister forced her way into the room, found the child unattended and notified the police. The respondent was arrested and charged with risk of injury to a child, and the child was removed from her care pursuant to a ninety-six hour hold.[2] The child immediately was placed in foster care and, since December 23, 2005, has lived continuously with a maternal relative who would like to adopt her.[3] On October 5, 2006, the petitioner, the commissioner of children and families, moved to terminate the respondent's parental rights, and, on August 5, 2008, the court rendered judgment of termination pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[4] This appeal followed.

[2] General Statutes § 17a-101g permits the commissioner to remove a child from unsafe surroundings under a ninety-six hour hold.

[3] On October 13, 2005, the court granted the petitioner, the commissioner of children and families, temporary custody of the child, and on January 9, 2006, the child was adjudicated neglected.

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child.[5] . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling."[6] (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 190–91, 986 A.2d 351 (2010).

The respondent first claims that the court improperly found that the department made reasonable efforts to

[5] The respondent does not challenge the court's determination that termination was in the child's best interest.

[6] The respondent also asks us to note "the 'scrupulous' standard of review set forth by Justice Schaller in *In re Melody L.*, 290 Conn. 131, 174–209, 962 A.2d 81 (2009) (*Schaller, J.*, concurring). It is not clear to us what 'scrupulous review' means. Moreover, this purportedly more rigorous level of factual review has not been endorsed by our Supreme Court for termination of parental rights cases. Accordingly, we are without authority to apply it now." (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 191 n.6, 986 A.2d 351 (2010).

reunify her with her child because it is her position that the services provided to her were neither timely nor appropriate. We disagree. "[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id., 192. The record reveals the following efforts by the department. Specific steps to enable the respondent to regain custody of her child were ordered on October 21, 2005, and October 12, 2006. Pursuant to these steps, the department implemented a treatment plan and offered the respondent numerous services, including supervised visitation at the 'r Kids Family Center in New Haven, supervised visitation in her home, group parenting education, one-on-one parenting education, substance abuse screening,[7] anger management counseling, two psychological evaluations,[8] individual therapy, couples therapy, dialectical behavior therapy (DBT),[9] domestic violence counseling, supportive housing assistance, a referral to the bureau of rehabilitative services for work training and placement, and the assistance of the state's Birth to Three program.[10] The treatment plan adopted by the department was reviewed every six months and was modified to incorporate the recommendations of forensic psychologist Michael Haymes.[11] The record does

[7] No treatment for substance abuse was recommended.

[8] The respondent was diagnosed with major depressive disorder, attention deficit hyperactivity disorder and borderline personality disorder.

[9] DBT was recommended to treat the respondent's borderline personality disorder.

[10] The petitioner submitted evidence that the child suffered from developmental delays caused by microcephaly. The Birth to Three program offers early childhood intervention services for children under three years of age that show significant delays in development. Although the respondent initially rejected the assistance of the Birth to Three program, the child's foster mother continued to work closely with the organization, and, as a result, the child made significant strides in her development.

[11] The respondent argues that the department unreasonably delayed in referring her to DBT as recommended by Haymes. The record does not support her claim. Haymes evaluated the respondent on April 4, 2006. His report was drafted on May 5, 2006, and filed with the court on May 9, 2006. In August, 2006, the department referred the respondent to a DBT program

not reveal any significant delays or inadequacies in the rehabilitative services offered to the respondent and contains ample support for the court's finding that the department made reasonable efforts to reunify her with her child.

The respondent next claims that the court improperly determined that she had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B).[12] "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 180, 743 A.2d 165 (1999). In this case, the court found that the respondent had "made progress in all of the areas of her life regarding rehabilitation" but had not consistently demonstrated that she could provide for herself or for the child. After his first meeting with the respondent in May, 2006, Haymes opined that the chances of the respondent

offered by Yale-New Haven Hospital Adult Psychiatric Ambulatory Program. Following an intake interview, the supervising physician determined that Yale's program was not appropriate for the respondent. The department then referred the respondent to a DBT program at the Hill Health Center's Northside outpatient services program in New Haven, and the respondent enrolled in the DBT session that began in May, 2007. However, Northside's DBT program has an attendance policy. The respondent missed three or four sessions in violation of the policy, and, as a result, she was discharged from the program. She was, nevertheless, invited to participate in the next DBT session starting in September, 2007, and offered stress management counseling sessions by Northside in the interim.

[12] "The statute requires a court to find, by clear and convincing evidence, that the level of rehabilitation a parent has achieved falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in [the] child's life. . . . In making its determination, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Citation omitted; internal quotation marks omitted.) *In re Sole S.*, supra, 119 Conn. App. 192 n.8.

rehabilitating to the point of being able to be a responsible parent were "a bit of a long shot . . . ." In February, 2007, Haymes conducted a second psychological evaluation of the respondent and noted that she had "not really been able to achieve much" since their last meeting. On September 25, 2007, Haymes testified that "I don't think that it makes sense in terms of the child's age and needs to have her wait any longer [for the respondent to be able to parent her]."

The record also reveals that by the end of trial, supervised visitation at the 'r Kids Family Center had been temporarily suspended because the respondent missed several visits. Additionally, the respondent was noncompliant with the program offered by the bureau of rehabilitative services, was noncompliant with the requirements of her probation and was in danger of losing her housing assistance. Consequently, the court's determination that the respondent had failed to achieve a sufficient degree of rehabilitation pursuant to § 17a-112 (j) (3) (B) is well supported by the record.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The respondent also claims that the court applied the wrong standard of review to reach its determination that the respondent had not achieved a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B). This claim is without merit. The court cites and applies the correct standard of review on pages eight and nine of its decision: Section 17a-112 "requires the court to find, by clear and convincing evidence, that the level of rehabilitation he or she has achieved, if any, falls short of that which would reasonably encourage a belief that, within a reasonable time, he or she can assume a responsible position in the child's life. . . . The court finds, by clear and convincing evidence, that [the respondent] has failed to achieve a sufficient degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child . . . ." (Citations omitted.)